UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AIR PRODUCTS AND CONTROLS, INC.,

               Case number 05-73031
     Plaintiff,       Honorable Julian Abele Cook, Jr.

 v.

SAFETECH INTERNATIONAL, INC., ET AL.,

     Defendants.

ORDER

This lawsuit arises from a state court action[1] in which the Plaintiff, Air Products and Controls Inc. ("Air Products"),[2] accused the Defendants, SafeTech International, Inc. ("SafeTech") and R. Gaylen Davenport (Davenport"),[3] of fraudulently diverting a substantial sum of money from a sale of assets in a deliberate effort to avoid satisfying a legitimate financial obligation.[4]

---

[1] This lawsuit began on July 5, 2005 when Air Products filed its claims against the Defendants in a state court in Michigan. This action was removed from the state court on August 4, 2005 by the Defendants, both of whom cited the diversity of the parties in this dispute as the basis for their petition.

[2] Air Products, which distributes life safety products, such as duct smoke detectors and a variety of electronic relays, is headquartered in Pontiac, Michigan. Its products are manufactured in Michigan and distributed world-wide.

[3] SafeTech is headquartered in Lenexa, Kansas, the residence of its president and owner, R. Gaylen Davenport.

[4] In essence, Air Products has asserted the following claims against the Defendants in this lawsuit: (1) fraudulent transfer in violation of Mich. Comp. Laws § 566.34(1)(a); (2) fraudulent transfer in violation of Mich. Comp. Laws § 566.34(1)(b)(2); (3) fraudulent transfer by debtor in violation of Mich. Comp. Laws § 566.35(1); (4) unjust enrichment by Davenport; (5) illegal

On September 20, 2005, the Defendants filed a motion to dismiss, in which it asserted that this Court does not have personal jurisdiction over them and, hence, cannot assess the merits of Air Products' claims in this litigation. For the reasons that are stated below, this motion must be granted.

I.

On August 30, 1993, SafeTech opened an account with Air Products to purchase goods on credit. Shortly thereafter, Davenport, acting on behalf of his Company, placed a number of purchase orders with Air Products. Acting upon his requests, Air Products manufactured or assembled its products in Michigan and shipped them to the SafeTech facility in Kansas or to the locations of those customers who had been designated to receive the shipment of goods. When the parties' business relationship deteriorated, SafeTech initiated a lawsuit in a federal court in Kansas, claiming that Air Products had, among other things, violated the terms of their purchase agreement. Air Products counterclaimed with allegations of fraud, breach of contract, and unjust enrichment. On June 21, 2004, a federal jury awarded the sum of $216,290.51 in damages to Air Products.

Here, as in every other legal proceeding, the burden of establishing personal jurisdiction over the defendants rests with the plaintiff. *Third Nat. Bank in Nashville v. Wedge Group, Inc.,* 882 F.2d 1087, 1089 (6th Cir. 1989) (quoting *Welsh v. Gibbs,* 631 F.2d 436, 438 (6th Cir. 1980)). In this diversity case, it is incumbent upon the federal court to determine if personal jurisdiction exists over a nonresident litigant by applying the law of the state in which it sits. *Third. Nat. Bank,* 882

---

dividend; (6) attorneys fees; and (7) equitable relief.

F.2d at 1089 (quoting *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1167 (6th Cir.1988)). Thus, in order to fulfill this legal obligation, the Court should seek to determine if (1) there exists a state rule or statute which potentially confers personal jurisdiction upon an out-of-state defendant, and (2) the application of such a rule complies with the fundamentals of due process. *Unistrut Corp. Baldwin,* 815 F.Supp. 1025, 1027 (E.D. Mich. 1993); *Thornton v. United States*, 2004 U.S. Dist. LEXIS 13849, 19 (E.D. Mich. 2004). Consistent with the fundamentals of due process, a non-resident defendant must acquire certain minimum contacts with the state so that the lawsuit does not offend the "traditional notions of fair play and substantial justice." *Internat'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945).

II.

The State of Michigan maintains three "long-arm" statutes, all of which delineate those circumstances in which a state forum may assert personal jurisdiction over a non-resident litigant. One such statute addresses general personal jurisdiction. Mich. Comp. Laws § 600.701 (1979). A second statute addresses specific or limited personal jurisdiction. Mich. Comp. Laws § 600.705 (1979). The third statute addresses personal jurisdiction over corporations. Mich. Comp. Laws § 600.715 (2005).

One of Michigan's "long-arm" statutes establishes general personal jurisdiction over those persons who are (1) present in the state at the time when process is served, (2) domiciled in the state at the time when process is served, or (3) willing to accept service of process in Michigan. Mich. Comp. Laws § 600.701 (2005). The record in this cause indicates that when SafeTech and Davenport were served with process, neither of these Defendants were (1) present in the State of Michigan, or (2) domiciled in Michigan. Moreover, there is no evidence that either of them ever

consented to be served in this State.

Another "long arm" statute in Michigan establishes seven situations, in which specific or limited personal jurisdiction over an individual (such as Davenport) can be conferred; namely, (1) the transaction of any business within the state; (2) the doing or causing an act to be done or the consequences to occur within the state resulting in an action for tort; (3) the ownership, use, or possession of real or tangible personal property within the state; (4) contracting to insure a person, property, or risk located within the state at the time of contracting; (5) entering into a contract for services to be rendered or for materials to be furnished in the state by the defendant; (6) acting as a director, manager, trustee, or other officer of a corporation that is incorporated under the laws of, or having its principal place of business within, this state; and (7) maintaining a domicile in this state while subject to a marital or family relationship that is the basis of the claim for divorce, alimony, separate maintenance, property settlement, child support, or child custody. Mich. Comp. Laws. § 600.705 (2005).

A third Michigan "long arm" statute identifies five situations in which personal jurisdiction can be obtained over a corporation (such as SafeTech): (1) the transaction of any business within the state; (2) the doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort; (3) the ownership, use, or possession of any real or tangible personal property situated within the state; (4) contracting to insure any person, property, or risk located within this state at the time of contracting; and (5) entering into a contract for services to be performed or for materials to be furnished in the state by the defendant. Mich. Comp. Laws § 600.715 (2005).

In its challenge to the motion before the Court, Air Products submits that SafeTech and

4

Davenport transacted business in Michigan and caused tortious consequences to occur within the State. In order to evaluate the merit of this contention by Air Products, the Court must now examine two issues as they relate to this cause of action; namely, (1) whether the Defendants transacted a business activity within the State of Michigan, and (2) if either of them caused consequences to occur within the State which resulted in a tort action.

A.  "Transacted a business activity within the State of Michigan"

In 1988, the Court of Appeals for the Sixth Circuit opined that the slightest act of business in a state by a defendant satisfies the first prong of the statute. *Lanier v. Am. Bd. of Endodontics,* 843 F.2d 901, 906 (6th Cir. 1988). In *Lanier,* 843 F.2d at 908, the appellate court determined that the exchange of correspondence and telephone calls between the defendant and a physician in Michigan, including the collection of an application fee as a part of an agreement to consider her credentials for Board certification to practice medicine, constituted a sufficient transaction to warrant the conclusion that it had conducted some business within the State.

It is important to note that "[j]urisdiction in these circumstances may not be avoided merely because the defendant did not physically enter the forum State. Although territorial presence will frequently enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

In the present case, the life safety products that had been ordered by SafeTech were manufactured by Air Products in Michigan. From August 1993 until March 2002, SafeTech

5

continuously communicated with Air Products at its office in Michigan to discuss and negotiate purchase orders which, over a period of time, amounted to several hundred written and oral exchanges during this period of time. SafeTech also faxed or mailed its purchase orders to the Air Products headquarters in Michigan.

The phrase, "any business within the state," has been broadly interpreted. *Fisher v. Blackmore*, 325 F. Supp. 2d 810, 814 (E.D. Mich. 2004). The word, "any," impliedly incorporates such other words as "'each" and "every." *Id.* (quoting *McNic Oil & Gas Co. v. Ibex Resources Co.*, 23 F. Supp. 2d 729 (E.D. Mich. 1998)). Given the broad interpretation of the phrase "any business within the state" that is applicable here, it suffices to conclude that SafeTech conducted business within the State of Michigan when it placed purchased orders with Air Products in the State.

B.      "Caused consequences to occur within the State which resulted in a tort action"

In this lawsuit, Air Products has alleged that SafeTech and Davenport, through their collective acts of fraud and other forms of misconduct, caused "consequences to occur" within the State of Michigan which resulted in the commencement of a tort action. As such, Air Products submits that its business was adversely affected in the State of Michigan by SafeTech's wrongful conduct which, according to this argument, provides the Court with a sufficient basis to reject the applicability of this current motion. Thus, Air Products submits that SafeTech and Davenport caused consequences within the State of Michigan which resulted in a justifiable action for fraud. Finally, Air Products submits that to the extent that SafeTech's alleged misconduct has caused its business to decline, such an impact will likely adversely affect its employees in the form of lower wages.

In *Hadad v. Lewis*, 382 F. Supp. 1365, 1371 (E.D. Mich. 1974), the plaintiff alleged that two

corporate officers, Rose and Lewis, had made fraudulent misrepresentations which caused him to suffer damages. The Court held that jurisdiction was proper pursuant to Mich. Comp. Laws § 600.705(2) because these defendants had caused adverse consequences to occur in Michigan which resulted in a lawsuit for fraud. *Id.*

Taking the impact of Air Products' claims against the Defendants into consideration, it is sufficient to conclude that their alleged diversion of funds did cause some "consequences" to occur in the State of Michigan. Therefore, this Court does have jurisdiction over SafeTech and Davenport.

III.

This Court must now seek to determine if the exercise of personal jurisdiction over the Defendants satisfactorily comports with the due process clause of the Fourteenth Amendment. *Fisher*, 325 F.Supp.2d at 815. In analyzing due process limits of personal jurisdiction, a distinction must be made between "general" jurisdiction and "specific" jurisdiction. *Third Nat. Bank*, 882 F.2d at 1089. In a case of "general" jurisdiction, the contacts by a defendant with the forum state must be of a "continuous and systematic" nature. This "continuous and systematic" contact must be reasonably established so that the forum state may exercise personal jurisdiction over the defendant even if the action is unrelated to his relationship with the forum state. *Id.*

A.   <u>General Jurisdiction</u>

Air Products argues that SafeTech engaged in a decade long relationship with its business office in Michigan. In addition, Air Products points out that SafeTech (1) placed orders for products which cost approximately hundreds of thousands of dollars and (2) engaged in "thousands

of contacts" with its business operations in Michigan via phone calls, emails, and faxes. However, it appears from the record that the State of Kansas is the site of SafeTech's headquarters, and the home of its president. There is no evidence that SafeTech has any business facilities in Michigan or is qualified to do business within this State. Furthermore, it does not appear that SafeTech has an office, a registered agent, or a bank account in Michigan. In addition, as is demonstrated by this litigation, the parties have ceased conducting business with each other. Thus, it cannot be said that the Defendants' contacts with the State of Michigan were "continuous and systematic" when this litigation was commenced or they were served with formal notices of this legal proceeding. Consequently, it appears as though there is no basis - statutory or constitutional - for the exercise of general jurisdiction over the Defendants. *See Neagos v. Valmet-Appleton, Inc.*, 791 F.Supp. 682, 686 (E.D. Mich. 1992) (lack of principal place of business, facilities, office, registered agent, bank account, sales tax number, and lack of paying taxes in State of Michigan deprived court of general jurisdiction over defendants).

B.  Specific Jurisdiction

In dealing with issues relating to "specific" jurisdiction, "a State exercises personal jurisdiction over the defendant in a suit arising out of or related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S. A. v. Hall*, 466 U.S. 408, 414 (1984). In *Southern Machine Co. v. Mohasco Industries, Inc.,* the Court of Appeals for the Sixth Circuit promulgated a three-prong test for determining whether personal jurisdiction may be exercised in a manner that is consistent with due process. 401 F.2d 374 (6th Cir 1968). It declared that "[f]irst, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the

defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Id.* at 381.

     1.    <u>Purposeful Availment</u>

In attempting to determine whether the Defendants purposefully availed themselves of the privilege of acting or causing consequences to occur in the forum state, a court should consider whether either of them (1) performed services in the forum state, or (2) solicited sales in the forum state by means of advertising. *Alexander-Schauss v. Lew*, 351 F. Supp. 2d 635, 639 (E.D. Mich. 2004). By "purposefully availing" themselves of opportunities within the forum state, they opened themselves up to that forum's jurisdiction. *Lanier*, 843 F.2d at 910. Thus, jurisdiction may be maintained "where the [defendants'] contacts proximately result from [their own actions] . . . that create a 'substantial connection' with the forum state," to such an extent that they should have reasonably anticipated being subjected to a lawsuit there. *Burger King,* 471 U.S. at 475. "This 'purposeful availment' requirement ensures that [neither SafeTech nor Davenport] be haled into a jurisdiction solely as a result of 'random,' 'fortuitous' or 'attenuated' contacts." *Id.*

In *Flight Devices Corp. v. Van Dusen Air, Inc.,* 466 F.2d 220 (6th Cir. 1972), an out-of-state defendant negotiated a contract with an Ohio plaintiff for the purchase of a substantial number of transponders. The plaintiff sued the defendant in Ohio after payment on the check had been stopped. *Id.* at 223. Although a substantial portion of the negotiations occurred in other states, the Court of Appeals for the Sixth Circuit held that the "purposeful availment" portion of the test was satisfied because the defendant knew that the plaintiff, along with its facilities, was located in Ohio. *Id.* at 227. The court also observed that a breach of contract, (i.e., the defendant's failure to pay),

would have substantial consequences within the state. *Id.*

In *Cole v. Mileti,* 133 F.3d 433 (6th Cir. 1998), an Ohio resident sued a California resident in Ohio for his breach of a surety agreement. The parties' agreement had been negotiated through a series of telephone conversations between California and Ohio, and their contract was executed by sending it through the mail. *Id.* at 435. The Court of Appeals for the Sixth Circuit determined that by negotiating and executing a contract via telephone calls and letters to an Ohio resident, the non resident defendant had "purposefully availed" himself of the privilege of conducting activities in Ohio by creating a continuing obligation in the state. *Id.* at 436.

In this case, SafeTech contracted with a Michigan based company whose products were manufactured in the State. Although SafeTech did not purposefully direct itself to the residents of Michigan, it conducted discussions and negotiations of purchase orders via telephone conversations with Air Products in Michigan. Additionally, SafeTech mailed and faxed its purchase orders to Air Products in Michigan. SafeTech knew that Air Products, along with its facilities, was located in Michigan. Therefore, SafeTech, and through its president, purposefully availed themselves of the privilege of acting in Michigan.

      2.     <u>Cause of action arising out of the Defendants' activities in the state</u>

In *Lanier,* 843 F.2d at 909, the Court of Appeals for the Sixth Circuit held that the "arising out of" requirement is satisfied if the cause of action was "made possible by" or "lies in the wake of" the defendant's contact with the forum state. However, when the operative facts of the controversy are not related to the defendant's contact with the forum state, the cause of action does not arise from that contract. *Southern Machine*, 401 F.2d at 384.

Here, it cannot be said that the present cause of action arose from the Defendants' activities

10

in Michigan. Air Products has not alleged a breach of any specific provisions of its contract with SafeTech.  Instead, it has attributed a cause of action that was based on the sale of SafeTech's assets which presumably occurred in another jurisdiction. No evidence has been presented to this Court which suggests or demonstrates that the sale of the SafeTech assets took place in Michigan or involved another business entity within this State.  Simply put, the dispute between Air Products and the Defendants over the alleged diversion of monies from the sale of SafeTech's assets to Firealarm.com. must necessarily be resolved by a tribunal in a forum state other than in the State of Michigan.  Therefore, the cause of action did not arise from SafeTech's activities in the state.

    3.    <u>Reasonableness</u>

In *Asahi Metal Industry Co., Ltd. v. Superior Court,* 480 U.S. 102, 113 (1987), the Supreme Court declared that the question of whether the exercise of specific jurisdiction over the defendant was or was not reasonable is determined by balancing "the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief."  However, where minimum contacts have been established, the interests of the plaintiff will justify a serious burden being placed upon the defendant. *Id.* at 105-6.

Since Air Products is headquartered in Michigan, this State has a legitimate interest in resolving the dispute.  *See Asahi*, 480 U.S. at 106.  However, requisite contacts with Michigan have not been established because it cannot be determined that the instant civil litigation arises from SafeTech's contacts with this State.  Since the transaction underlying the basis for Air Product's claim does not have a substantial connection to Michigan, it would not be reasonable to exercise specific jurisdiction over SafeTech and Davenport in this case.  Consequently, the exercise of

11

specific jurisdiction over SafeTech by this Court does not comport with the due process clause of the Fourteenth Amendment.

V.

For the reasons that are stated above, Safetech's motion to dismiss Air Product's complaint for lack of personal jurisdiction must be, and is, granted.

IT IS SO ORDERED.

DATED:   February 10, 2006              s/ Julian Abele Cook, Jr.
         Detroit, Michigan              JULIAN ABELE COOK, JR.
                                        United States District Judge

Certificate of Service

I hereby certify that on February 10, 2006, I electronically filed the foregoing with the Clerk of the Court using the ECF system, and I further certify that I mailed a copy to the non-ECF participant(s).

s/ Kay Alford
Courtroom Deputy Clerk